1

2

3

4

**CASSETT RICKER LAW PLLC**
4647 NORTH 32ND STREET, SUITE 120
PHOENIX, ARIZONA 85018
Keith C. Ricker (#24947)
keith@crickerlaw.com
(602) 954-2076

5

6

7

8

9

**Law Office of Andrew P. Lahser, PLC**
16824 E. Avenue of the Fountains, Suite 14
Fountain Hills, AZ 85268
Andrew P. Lahser (#22544)
andrew.lahser@azbar.org
(480) 816-9383

Attorneys for Plaintiff

10

11

12

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

13

14

15

16

17

18

| | |
|---|---|
| Cornucopia Products, LLC, | Case No.: _____ |
| Plaintiff, | **VERIFIED COMPLAINT** |
| vs. | (Assigned to the Hon. _____) |
| Dyson, Inc. and Dyson, Ltd., | |
| Defendants. | |

19

20

21

        Demanding a jury trial, Plaintiff Cornucopia Products, LLC ("Cornucopia"), for its Complaint against Dyson, Inc. and Dyson, Ltd. (collectively "Dyson"), alleges as follows:

22

**I.      PARTIES, JURISDICTION, AND VENUE**

23

24

25

26

27

        1.      Cornucopia is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.  As described in further detail below, Cornucopia was inspired by an expired Japanese patent, which had been issued in 1981, to develop a bladeless fan.  Cornucopia has contracted for the manufacture of its bladeless fan in China for distribution and sale in the United States.

28

2.      Dyson, Inc. is an Illinois corporation with its principal place of business in Chicago, Illinois.  Dyson, Inc. is a subsidiary of Dyson, Ltd., a private limited company with its principal place of business in Malmesbury, United Kingdom.  On information and belief, the acts alleged in this Complaint were committed under the direction and on behalf of Dyson, Ltd. as part of its world-wide strategy to control the bladeless fan market.  Thus, for convenience, Dyson, Inc. and Dyson, Ltd. are collectively referred to herein as Dyson.  Like Cornucopia, Dyson designed, and has now brought to market, a bladeless fan.  Unlike Cornucopia, Dyson, ignoring that it was actually invented more than thirty years ago, claims the invention of the bladeless fan as its own, and through a pattern of threats and intimidation, monopolizes the bladeless fan market.

3.      This action arises from Dyson's unlawful and anticompetitive conduct in violation of federal and state antitrust statutes and state common law.  Cornucopia brings this action for treble damages and for permanent injunctive and other relief against Dyson resulting from, among other things, Dyson's violations of the Sherman Act, 15 U.S.C. § 2.  Because Dyson's monopolistic conduct includes threats to sue based on fraudulently obtained, invalid, and unenforceable patents that, in any event, are not infringed, Cornucopia also seeks declaratory relief as to those patents.  This Court has subject matter jurisdiction over these claims pursuant to 15 U.S.C. §§ 15 and 26, and pursuant to 28 U.S.C. §§ 1331, 1337, and 2201.  Cornucopia also asserts claims for Dyson's violations of Arizona's antitrust statutes and for its tortious interference with Cornucopia's prospective business advantage.  This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.  The Court has personal jurisdiction over Dyson because of Dyson's substantial, continuous presence in this District and its purposeful activities directed toward and committed in this District.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Dyson transacts business in this District and has engaged in conduct in this District out of which a substantial part of the events giving rise to Cornucopia's claims occurred.

## II.   GENERAL ALLEGATIONS

5.     This lawsuit is about Dyson's monopolization of the market for a safer electric fan.  This safer fan—termed "bladeless" because it lacks the exposed blades of standard electric fans—is relatively new to the United States marketplace, but is not a new invention.

6.     More than thirty years ago, on May 28, 1980, Masumi Okabe and Shigeru Honjiyou of the Tokyo Shibaura Electric Company applied for a Japanese patent for a new bladeless electric fan.

7.     On December 23, 1981, Japanese Patent No. S56-167897 issued to Ikabe and Honjiyou, claiming

> An electric fan, comprising: a base stand that holds fan blades and a motor that drives the fan blades, and a wind discharge ring with a ring shaped slit that is supported on the base stand, has a hollow shape that receives the wind created by the fan blades from the base stand, and discharges wind therefrom.

8.     Almost thirty years later, Dyson modified Ikabe and Honjiyou's bladeless fan and claimed the result as its own invention.

9.     Dyson set out to monopolize the bladeless fan market.

10.    Dyson's first step was to obtain patents.   Because Dyson concealed important elements of the prior art from the examiner, its patents were obtained by fraud.

11.    Among other things, upon information and belief, Dyson failed to include an English translation of the earlier Japanese '897 patent.  Dyson intentionally omitted the translation in order to misrepresent the '897 patent's scope to the examiner because it knew that the Japanese patent was highly material to patentability and, if fully understood, would result in a finding that Dyson's supposed invention was not patentable under 35 U.S.C. § 1 *et seq* and the rules and regulations pertaining thereto.

12.     With the translation omitted, Dyson could misrepresent to the examiner that its fan incorporated non-obvious elements of fluid dynamics.  But Dyson's supposedly new element (a "Coanda surface") was not new.   A Coanda surface is simply a means of directing the fan's output, which the Japanese fan included and called a "wind discharge ring."  Dyson makes much of its invention of "air multiplier technology"—i.e. that the fan pushes more air than is actually created by the fan's base.  But, again, the Japanese patent discloses the same thing: "the actual amount of wind is much higher than the amount of wind directly discharged from the slit."

13.     The earlier invention is also critical because the Japanese patent and other prior art significantly limits the scope of Dyson's patents—if they are valid at all.  Specifically, because the Japanese patent is now expired, anyone is free to use or sell a bladeless fan as disclosed in the Japanese patent and other prior art.  Dyson can only seek to protect add-ons to the Japanese design that meet the requirements of 35 U.S.C. § 1 *et seq*.   But Dyson tells the world that **any** competitor manufacturing, importing, distributing, and/or retailing **any** bladeless fan will be sued.

14.     In October 2009, Dyson launched its bladeless fan in the United States market.

15.     From October 2009 until January 2012, because of Dyson's conduct as described herein, no competing bladeless fan was sold in United States retail stores.  Chinese bladeless fans are available on the internet for direct shipment from China, but sales of those products are minimal.

16.     On information and belief, Dyson accounts for more than 80 percent of the bladeless fans sold in the United States.

17.     The United States market for bladeless fans is separate and distinct from the market for standard fans.  Bladeless fans offer a safety and performance advantage over standard fans to the point that they are not substitutable products.

18.     Because consumers that want the safety and performance provided by a bladeless fan are not willing to substitute a standard fan, Dyson's bladeless fans are much more expensive than standard fans.  Standard fans in the United States typically retail at low price; for example, $10.  Dyson's bladeless fan, on the other hand, is much more expensive, retailing for more than $250.

19.     Cornucopia imports and sells a "bladeless" fan.   While Cornucopia's business is relatively new, it is no "gleam in the eye."

20.     Cornucopia developed its own bladeless fan inspired by the Japanese invention.

21.     Cornucopia spent significant time and money analyzing the Japanese patent and creating its own bladeless fan.

22.     Cornucopia has now contracted with a Chinese company to manufacture and then import bladeless fans.

23.     Cornucopia has contracts to distribute those bladeless fans to retailers for sale to consumers in the United States.

24.     Dyson has made specific threats to Cornucopia's customers (bladeless fan retailers) and suppliers (bladeless fan manufacturers) that Dyson would sue those customers and suppliers if they deal with Cornucopia or if they sell or manufacture any competing bladeless fans.

25.     Because of Dyson's threats to retailers, Cornucopia sells fewer bladeless fans than it would sell absent Dyson's threats.

26.     Also because of Dyson's threats to manufacturers, Cornucopia's cost to manufacture its bladeless fan are at least five dollars more per unit than they would be absent Dyson's threats.

27.     Also because of Dyson's threats to retailers and manufacturers, consumers seeking bladeless fans for safety and performance reasons have no option—they must buy from Dyson despite its supracompetitive pricing.

**COUNT I**
**ILLEGAL MONOPOLIZATION**
**(Violation of 15 U.S.C. § 2)**

28.     Plaintiff incorporates all allegations of this Complaint as though fully set forth herein.

29.     As described above, Dyson possesses monopoly power in the United States market for bladeless fans.

30.     Dyson willfully acquired or maintained monopoly power in the United States bladeless fan market, not by virtue of providing superior service, its business acumen or by historic accident, but rather through willful, anticompetitive and exclusionary conduct including improper threats of litigation and other actions against manufacturers and retailers.

**Dyson Monopolizes The Bladeless Fan Market**
**By Threatening Litigation Based On Patents Obtained By Fraud**

31.     To prevent competitors like Cornucopia from effectively competing in the United States bladeless fan market, Dyson threatens United States retailers with patent litigation.

32.     Those litigation threats relate to U.S. Patent Nos. 7,931,449; 7,972,111; 8,092,166; 8,052,379 described below.

33.     The '449, '111, '166, and '379 patents issued because Dyson defrauded the patent office.

34.     Specifically, on information and belief, Dyson intentionally withheld highly relevant prior art by failing to provide adequate translations of Japanese Patent No. S56-167897.

35.     Dyson's intentional omission of adequate translations of the Japanese '897 Patent was material to the issuance of the '449, '111, '166, and '379 patents.

36.     Dyson's attempted enforcement of the '449, '111, '166, and '379 patents threatens to lessen competition in the United States bladeless fan market because it prevents retailers from stocking alternative bladeless fans, resulting in supracompetitive prices.

**Dyson Monopolizes The Bladeless Fan Market By**
**Strategic, Sham Patent Litigation Without Regard To The Merits**

37.     Even if they were valid and enforceable, Dyson's '449, '111, '166, and '379 patents are much narrower than Dyson asserts when it threatens manufacturers and retailers.  By seeking to assert a patent monopoly to *all bladeless fans*, Dyson is engaging in a method of doing business to extend the monopoly beyond what limited rights the '449, '111, '166, and '379 patents might confer.

38.     On information and belief, Dyson has never conducted an infringement analysis on Cornucopia's bladeless fan.  Without having conducted such an analysis, Dyson has no basis upon which to threaten a lawsuit related to Cornucopia's fan.

39.     Nonetheless, without regard to the merits, Dyson threatens retailers such as *Target* and *Bed, Bath, and Beyond* with liability/inconvenience if they sell **any competing bladeless fan**, such as Cornucopia's.

40.     For example, in April 2011 a Dyson sales representative at the *Ace Hardware* tradeshow in Chicago, Illinois told a representative of Cornucopia that Dyson would sue if Cornucopia entered the bladeless fan market.

41.     Similarly, a Dyson sales representative told Laura Kerlagon, a representative of *Big Wall*, that Dyson would pursue litigation if Cornucopia entered the market.

42.     Dyson substantiates its threats of United States enforcement litigation by pointing to its extensive international enforcement activities.

43. For example, Dyson brought a patent infringement claim in China against a Chinese manufacturer, *Yongkang Yixuan*. Dyson and its outside lawyers publish the successful outcome of that case in order to intimidate those it threatens with United States patent litigation.

44. According to news reports, Dyson brought a similar claim in Korea.

45. In fact, a recent article reports that Dyson is "embroiled in 15 lawsuits involving copycat bladeless fans."

46. On information and belief, each of these lawsuits was brought without regard to the merits, but rather for the purpose of deterring potential manufacturers from making bladeless fans.

47. Dyson's attempted enforcement threatens to lessen competition in the United States bladeless fan market because it increases the cost to manufacture bladeless fans by intimidating a subset of potential manufacturers.

**Dyson Monopolizes The Bladeless Fan Market**
**By Threatening Retailers With Lawsuits And Withholding Of Its Popular Vacuums**

48. In approximately July or August 2011, a Cornucopia representative travelled to Northern California to meet with a retail buyer for *Walmart*.

49. Upon seeing a prototype and learning that Cornucopia's bladeless fan was available at a price fitting *Walmart's* buying structure, the *Walmart* buyer was excited. In fact, he asked Cornucopia's representative to fill out the paperwork *Walmart* requires of its distributors that same day.

50. Shortly thereafter, *Walmart's* Northern California buyer told Cornucopia that *Walmart* was no longer interested.

51. Upon information and belief, a more senior *Walmart* buyer from Arkansas told the Northern California buyer that Dyson had threatened to remove Dyson vacuums from *Walmart* stores if *Walmart* brought in competing bladeless fans.

52.     On information and belief, Dyson also threatens United States retailers with patent litigation in the same manner as described above with respect to manufacturers.

53.     As a direct and proximate result of Dyson's anticompetitive, exclusionary actions, Cornucopia has suffered substantial injury to its business and property in an amount to be proven at trial.  Cornucopia is entitled to treble its actual damages pursuant to 15 U.S.C. § 15.

54.     As a further direct and proximate result of Dyson's anticompetitive, exclusionary actions, the entire marketplace for bladeless fans has been injured by an artificial restriction on the manufacture, distribution, and retail sale of competing bladeless fans.

**COUNT II**
**ATTEMPTED MONOPOLIZATION**
**(Violation of 15 U.S.C. §2)**

55.     Plaintiff incorporates all allegations of this Complaint as though fully set forth herein.

56.     Dyson engages in the anticompetitive and exclusionary conduct described in this Complaint.

57.     Dyson engages in that conduct with the specific intent to destroy competition, obtain an unfair competitive advantage, and monopolize the United States bladeless fan market.

58.     In the alternative to the allegation that Dyson has obtained monopoly power in the United States bladeless fan market, through Dyson's anticompetitive and exclusionary conduct, there is a dangerous probability that Dyson will achieve such power.

59.     Dyson's anticompetitive conduct is not justified by valid business reasons or lawful, pro-competitive efficiencies.

60.     As a direct and proximate result of Dyson's attempts to monopolize the United States bladeless fan market, Cornucopia has suffered substantial injury to its business and property in an amount to be proven at trial.  Cornucopia is entitled to treble its actual damages pursuant to 15 U.S.C. § 15.

61.     As a further direct and proximate result of Dyson's attempts to monopolize the United States bladeless fan market, the entire marketplace for bladeless fans has been injured by an artificial restriction on the manufacture, distribution, and retail sale of competing bladeless fans.

## COUNT III
## ILLEGAL MONOPOLIZATION
### (A.R.S. § 44-1401 *et. seq.*)

62.     Plaintiff incorporates all allegations of this Complaint as though fully set forth herein.

63.     By the acts described above in Cornucopia's claims for relief under federal antitrust law, Dyson has established, maintained or used a monopoly, or attempted to establish a monopoly, of trade and commerce within Arizona for the purpose of excluding competition or maintaining prices in violation of A.R.S. § 44-1403.

64.     Dyson's conduct is anticompetitive and unlawful pursuant to A.R.S. § 44-1401 *et. seq.*

65.     Dyson's anticompetitive conduct is not justified by valid business reasons or lawful, pro-competitive efficiencies.

66.     As a direct and proximate result of Dyson's anticompetitive conduct within Arizona, Cornucopia has suffered substantial injury to its business and property in an amount to be proven at trial. Dyson's anticompetitive conduct has also injured customers and the marketplace by artificially restricting the available choices of bladeless fans, and eliminating both competition and constraints on Dyson's dominant market power in the United States bladeless fan market.  Moreover, Dyson's violations of Arizona's antitrust laws are flagrant and Cornucopia is entitled to an award of treble actual damages pursuant to A.R.S. § 44-1408(B).

### COUNT IV
### TORTIOUS INTERFERENCE
### (Intentional Interference With Business Expectancy)

67.     Plaintiff incorporates all allegations of this Complaint as though fully set forth herein.

### Dyson Intentionally Interferes
### With Cornucopia's Business Expectancy With United States Retailers

68.     Cornucopia has a valid business expectancy with retailers including, among others, *Walmart*, *Bed Bath & Beyond*, and *Target*.

69.     Dyson knows of Cornucopia's business expectancy with retailers.  Among other ways, a Dyson representative saw and interacted with a Cornucopia representative at a trade show for retailers.  More generally, Dyson knows that the retailers through whom Dyson sells its bladeless fans would like to stock competing bladeless fans, for example, Cornucopia's.

70.     As described in this Complaint, Dyson intentionally and willfully interferes with Cornucopia's business expectancy with retailers.

71.     On information and belief, among other ways of intentionally interfering, Dyson threatens retailers with lawsuits if they stock other bladeless fans like Cornucopia's.  Dyson also threatens to withhold its vacuums from retailers if they stock competing bladeless fans.

72.     Because, as described above, the threatened lawsuit would be based on fraudulently obtained patents and is part of a pattern of sham litigation, those threats are improper.

73.     Because the threat to withhold Dyson vacuums is an attempt to preserve its monopoly in the United States bladeless fan market, it is improper.

74.     As a direct and proximate result of Dyson's tortious interference, certain of the retailers refuse to do business with Cornucopia and others will only do business with Cornucopia on a smaller test scale, thus, damaging Cornucopia.   Dyson's actions are intentional, aggravated and committed with an evil mind and an intent to cause injury, or in reckless and/or deliberate disregard of an unjustifiably substantial risk of significant harm to Cornucopia.   Cornucopia is entitled to an award of punitive damages against Dyson in an amount sufficient to punish Dyson and deter Dyson and others similarly situated from engaging in like conduct in the future.

**Dyson Intentionally Interferes**
**With Cornucopia's Business Expectancy With Manufacturers**

75.     Cornucopia has a valid business expectancy with Chinese manufacturing companies (the "Manufacturers") with whom it negotiated regarding the manufacture of bladeless fans.

76.     On information and belief, Dyson knew that Cornucopia had a business expectancy with the Manufacturers.

77.     Additionally, Dyson knows generally that United States companies, such as Cornucopia, are seeking to establish contracts with the Manufacturers in order to import and distribute bladeless fans in competition with Dyson in the United States bladeless fan market.

78.     Dyson intentionally and willfully interfered with Cornucopia's business expectancy with the Manufacturers by, among other things, threatening to sue the Manufacturers if they manufacture on behalf of Cornucopia or other United States companies.

79.     Because, as described above, the threatened lawsuit would be based on fraudulently obtained patents and is part of a pattern of sham litigation, those threats are improper.

80.     As a direct and proximate result of Dyson's tortious interference, certain of the Manufacturers refuse to do business with Cornucopia and others will only do business with Cornucopia at an inflated price, thus, damaging Cornucopia.  Dyson's actions are intentional, aggravated and committed with an evil mind and an intent to cause injury, or in reckless and/or deliberate disregard of an unjustifiably substantial risk of significant harm to Cornucopia.  Cornucopia is entitled to an award of punitive damages against Dyson in an amount sufficient to punish Dyson and deter Dyson and others similarly situated from engaging in like conduct in the future.

**COUNT V**
**DECLARATORY JUDGMENT**
**(Invalidity or Non-Infringement of United States Patent Nos.**
**7,931,449; 7,972,111; 8,092,166; 8,052,379)**

81.     Plaintiff incorporates all allegations of this Complaint as though fully set forth herein.

82.     Prior to the filing of this Complaint, the U.S.P.T.O. issued the '449, '111, '166, and '379 patents.

83.     Also prior to the filing of this Complaint, Cornucopia contracted for the manufacture, import, and distribution of its own bladeless fan.

84.     A real and actual controversy exists between Cornucopia and Dyson as to whether the '449, '111, '166, and '379 patents are valid and enforceable and, if so, whether Cornucopia's bladeless fan infringes them.

13

85.     As described above, in April 2011 a Dyson sales representative at the *Ace Hardware* tradeshow in Chicago, Illinois told a representative of Cornucopia that Dyson would sue if Cornucopia entered the bladeless fan market.

86.     Similarly, a Dyson sales representative told Laura Kerlagon, a representative of *Big Wall*, that it would pursue litigation if Cornucopia entered the market.

87.     Because of Dyson's threats of infringement litigation against Cornucopia, this controversy warrants declaratory relief.

88.     For the reasons stated in this Complaint the '449, '111, '166, and '379 patents are invalid and/or unenforceable for failure to comply with the requirements of the patent laws of the United States, 35 U.S.C. §1 *et seq.* and/or related rules and regulations.

89.     Even if valid, the '449, '111, '166, and '379 patents are not infringed, and will not be infringed in the future, by Cornucopia's use, sale, offer for sale or importation of its bladeless fan.

## III.   REQUESTED RELIEF

Wherefore, Cornucopia requests judgment against Dyson as follows:

A.     For the Court to declare that Dyson has violated the Sherman Act, 15 U.S.C. §§ 1, 2, the Arizona Uniform State Antitrust Act, Ariz. Rev. Stat. § 44-1401 *et. seq.*, and Cornucopia's common law rights as set forth in this Complaint;

B.     For the Court to declare that the '449, '111, '166, and '379 patents are invalid, unenforceable, and, in any event, not infringed by Cornucopia's use, sale, offer for sale or importation of its bladeless fan;

C.     For compensatory damages in an amount to be proven at trial resulting from Dyson's federal and state antitrust violations as set forth in this Complaint, trebled pursuant to 15 U.S.C. § 15 and A.R.S. § 44-1408;

D.     For compensatory damages in an amount to be proven at trial resulting from Dyson's violations of Cornucopia's common law rights as set forth in this Complaint;

E.     For punitive damages in an amount sufficient to punish Dyson and deter it and others similarly situated from engaging in like conduct in the future;

F.     For injunctive relief, pursuant to 15 U.S.C. § 26 and A.R.S. § 44-1408, to enjoin Dyson from engaging in further conduct to unlawfully restrain trade, discriminate in pricing, withhold essential facilities, monopolize, attempt to monopolize or otherwise impair competition in the United States bladeless fan market in violation of federal and Arizona antitrust laws;

G.     For Cornucopia's attorneys' fees and costs pursuant to, among other things, 15 U.S.C. §§ 15(a), 26 and A.R.S. § 44-1408(B);

H.     For pre- and post-judgment interest on all sums awarded at the highest rate allowed by law until paid in full; and

I.     For such other relief as the Court deems appropriate.


DATED this 2nd day of February, 2012

**CASSETT RICKER LAW PLLC**

By    */s/ Keith Ricker*
          Keith Clark Ricker
          4647 N. 32nd St., Ste. 120
          Phoenix, AZ 85018

          Attorneys for Plaintiff

**VERIFICATION**

I, John Schwartz, am the sole member of Cornucopia Products, LLC, the Plaintiff in the foregoing action.  I have read the Verified Complaint and I declare under penalty of perjury that to the best of my knowledge, the foregoing is true and correct.

Executed on this 2nd day of February, 2012.

Cornucopia Products

By: John Schwartz
Its: Sole member

16