**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cornucopia Products, LLC,<br><br>   Plaintiff,<br><br>vs.<br><br>Dyson, Inc. and Dyson, Ltd.,<br><br>   Defendants. | Lead No. CV 12-00234-PHX-NVW<br><br>**Consolidated With:** |
| Dyson Technology Limited; Dyson, Inc.,<br><br>   Plaintiffs,<br><br>vs.<br><br>Cornucopia Products, LLC,<br><br>   Defendant. | No. CV 12-00924-PHX-NVW<br><br>**ORDER** |

Before the Court are Cornucopia's Motion for Leave to Amend Complaint (Doc. 61) and Dyson Defendants' response and alternative Motion to Dismiss Pursuant to Rule 12(b)(6) and to Strike Pursuant to Rule 12(f) (Doc. 63).

After Dyson Defendants included an alternative motion in their response, Cornucopia was ordered to address Dyson Defendants' entire brief, including the alternative Motion to Dismiss, in its reply supporting its Motion for Leave to Amend. (Doc. 64.) It was further ordered that:

> [I]f Plaintiff Cornucopia contends that any further amendment
> would cure the challenges raised in Defendant Dyson's

>     Response, the language of any further amended pleading be stated in exact words in the reply or an attachment thereto. Cornucopia will waive any claim to further amendment not so stated.

(Doc. 64.) Cornucopia filed a Brief in Opposition to Dyson's Alternative Motion to Dismiss and in Support of Cornucopia's Motion to Amend Complaint (Doc. 67), which includes a request to file a proposed Second Amended Complaint.

For the reasons stated below, Cornucopia's Motion for Leave to Amend Complaint and request to file a Second Amended Complaint will be denied, and Dyson Defendants' alternative Motion to Dismiss Pursuant to Rule 12(b)(6) and to Strike Pursuant to Rule 12(f) will be denied as moot.

**I.     CLARIFICATION OF JULY 27, 2012 ORDER (DOC. 57)**

Dyson Defendants request clarification of the July 27, 2012 Order (Doc. 57) regarding Cornucopia's declaratory judgment claim (Count V). The Order stated, "As to the '449 and '111 patents, Cornucopia's declaratory judgment claim is not mooted as a matter of law by Dyson's election not to enforce those patents," but incorrectly referenced the '166 and '379 patents when it said, "Cornucopia has therefore stated a controversy sufficient for declaratory relief with respect to the '166 and '379 patents." The conclusion should have stated, "Cornucopia has therefore stated a controversy sufficient for declaratory relief with respect to the '449 and '111 patents."

The first paragraph of the Order stated that the Court would "deny Dyson's motion as to Cornucopia's declaratory judgment claims." The Order granted Dyson Defendants' Motion to Dismiss in part as specifically stated regarding Counts I, II, III, and IV, and otherwise denied the Motion to Dismiss. Therefore, the Order did not dismiss Cornucopia's declaratory judgment claim (Count V) as to any of the four patents.

Also, it is necessary to clarify that the July 27, 2012 Order (Doc. 57) did not make findings regarding the legitimacy or enforceability of Dyson's patents. The following statements made by Dyson Defendants in their brief (Doc. 63) opposing Cornucopia's motion to amend are incorrect and misstate the July 27, 2012 Order:  "lawful

enforcement of patents that this Court held were obtained legitimately," "holding that Dyson obtained those patents legitimately and was entitled to enforce them," "Dyson's legitimate enforcement of patents that (1) this Court has held were obtained lawfully," "lawfully obtained patents," "other patents that this Court has held were lawfully obtained," and "Dyson is free to enforce its design patents, or any of the '449, '166 or '111 Patents against competitors selling potentially infringing bladeless fans." (Doc. 63 at 4, 5, 8, 9, 10.) Dismissal of Cornucopia's antitrust and tortious interference claims does not constitute finding any of Dyson's patents legitimate or enforceable.

## II.     PROPOSED AMENDED COMPLAINT

The July 27, 2012 Order (Doc. 57) dismissed most of Cornucopia's original complaint, but left the door open to amendment with respect to the '379 patent.[1] (Doc. 57 at 22–23.) The '379 patent requires "a center of gravity located so that when the base is located on a substantially horizontal support surface, a projection of the center of gravity on the support surface is within the footprint of the base when the body is in a fully tilted position." '379 Patent, col. 13, ll. 22–26. In other words, the fan's nozzle can tilt upward or downward without shifting the fan's center of gravity, thus helping the fan to remain stable in a tilted position.

Cornucopia's original complaint claimed that Japanese number S56-167897 anticipated the '379 patent, and that Dyson intentionally obfuscated the Japanese patent's relevance by submitting an English translation of its abstract only (as opposed to the whole patent), thus committing fraud on the Patent Office and opening the way for a *Walker Process* theory of liability. But Cornucopia's complaint did not explain how the Japanese patent disclosed the ability to tilt while keeping the center of gravity constant.

At oral argument, Cornucopia's counsel quoted vague language from the Japanese patent about the ability to adjust the base stand's angle of elevation. (*See* Doc. 54 at 117.) The Court noted that such language says nothing about the ability to tilt while

---

[1] U.S. Patent No. 8,052,379.

keeping the center of gravity constant (Doc. 57 at 22), but out of an abundance of caution, Cornucopia's *Walker Process* claim was dismissed without prejudice as to the '379 patent. Cornucopia timely filed this motion for leave to amend.

Cornucopia's proposed amended complaint does not cure the defects of its original complaint. Cornucopia's burden is to raise a reasonable inference that "the patent would not have issued but for the misrepresentation or omission." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1071 (Fed. Cir. 1998). In an attempt to meet that burden, Cornucopia offers only the following three passages from its translation of the Japanese patent:

- "The electric fan according to claim 1 [a bladeless fan], wherein the wind dischsrge [*sic*] ring is supported in a manner such that the angle of elevation can be adjusted on the base stand."

- "with the present embodiment, the heavy motor 2 is stored inside the base stand 1 together with the fan blades 5, so the stability of the entire device can be similarly increased, and the shape can be more freely determined from aesthetics than is conventional because there is no need to struggle to ensure the stability, and therefore the design can be simplified."

- "Note, the present embodiment can also provide the following effects in addition to those described above. First, the wind discharge ring 13 is supported on the base stand 1 in a manner such that the angle of elevation can be adjusted, so the wind direction can be set as desired in the up and down direction."

(Doc. 61-1 at 8–9.)

None of these passages discloses anything similar to the tilting mechanism taught in the '379 patent. At best, these passages disclose two things. First, they disclose that a user can direct the nozzle upward or downward. However, it is inconceivable that the patent examiner would not have known that fans have been able to do this for many years. Thus, learning it from the Japanese patent would have been superfluous.

Second, these passages disclose that the whole bladeless fan apparatus supposedly is generally more stable than conventional fans because the fan's heaviest parts (the

- 4 -

motor in the blades) reside in the base. This says nothing about "a center of gravity located so that when the base is located on a substantially horizontal support surface, a projection of the center of gravity on the support surface is within the footprint of the base when the body is in a fully tilted position." '379 Patent, col. 13, ll. 22–26.

This does not mean that the Japanese patent is irrelevant to this lawsuit. Through Cornucopia's declaratory judgment claim (Count V of the original complaint), Cornucopia may eventually prove that the Japanese patent anticipates many features of the '379 patent or the other patents at issue here. However, to maintain a *Walker Process* claim, Cornucopia must at least raise a reasonable inference that the three passages from the Japanese patent disclosed above — which is all the language Cornucopia is willing to disclose in support of its claim — would have led a patent examiner to reject the '379 patent. Those passages do not raise such an inference. Amendment by the proposed Amended Complaint would therefore be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III.   PROPOSED SECOND AMENDED COMPLAINT

The proposed Second Amended Complaint does not cure the defect found above. Although it includes the English translation of JP-897 as an attachment, its allegations regarding JP-897 remain the same, and Cornucopia was warned that any further amendment not included in its proposed Second Amended Complaint would be waived.

However, Cornucopia will be granted leave to add Dyson Technologies, Ltd., as a Defendant and the additional allegations regarding Dyson Technologies, Ltd., included in paragraph 2 of the proposed Second Amended Complaint.

IT IS THEREFORE ORDERED that Cornucopia's Motion for Leave to Amend Complaint (Doc. 61) is DENIED.

IT IS FURTHER ORDERED that Cornucopia's request to file its proposed Second Amended Complaint (Doc. 67) is DENIED.

IT IS FURTHER ORDERED that Counts I, II, and III are dismissed with prejudice to the extent they assert a *Walker Process* antitrust theory based on Dyson's conduct in obtaining U.S. Patent No. 8,052,379.

IT IS FURTHER ORDERED that Dyson Defendants' alternative Motion to Dismiss Pursuant to Rule 12(b)(6) and to Strike Pursuant to Rule 12(f) (Doc. 63) is DENIED as moot.

IT IS FURTHER ORDERED that Cornucopia may file an amended complaint adding Dyson Technologies, Ltd., as a Defendant and the additional allegations regarding Dyson Technologies, Ltd., included in paragraph 2 of the proposed Second Amended Complaint, by September 21, 2012.

Dated this 18th day of September, 2012.

_____
Neil V. Wake
United States District Judge